IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| UNITED STATES OF AMERICA | I N D I C T M E N T |
|---|---|
| | Case No. _____ |
| v. | Violation:  21 U.S.C. §§ 812, 813, 841(a)(1), 841(b)(1)(C), 846, 848(a), 848(c), 853, 952(a)(2), 960(a)(1), 960(b)(3), and 963; and 18 U.S.C. §§ 1956(h) and 2 |
| DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON | |

COUNT ONE

**Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances and Controlled Substance Analogues Resulting in Serious Bodily Injury and Death**

The Grand Jury Charges:

From in or about January 2013 to the present, in the Districts of North Dakota,

Oregon, Florida, and elsewhere,

DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

did knowingly and intentionally combine, conspire, confederate, and agree together with

Brandon Corde Hubbard, et al., currently indicted in the District of North Dakota,

Northeastern Division, Case No. 2:15-cr-12, and others, both known and unknown to the

grand jury, to possess with intent to distribute and distribute a mixture and substance

containing a detectable amount of fentanyl, a Schedule II controlled substance, and

ANPP (4-anilino-*N*-phenethyl-4-piperidine), a Schedule II controlled substance, and did

possess with intent to distribute and distribute the following analogue controlled

substances, as defined in 21 U.S.C. § 802(32), knowing the substances were intended for human consumption as provided in 21 U.S.C. § 813:

  A.  Acetyl fentanyl (*N*-(1-phenethylpiperidin-4-yl)-*N*-pheylacetamide), a
      controlled substance analogue of fentanyl; and

  B.  Beta-hydroxy-thiofentanyl, a/k/a (β)-hydroxythiofentanyl, *N*-[1-[2-hydroxy-2-
      (2-thienyl)ethyl]-4-piperidinyl]-*N*-phenyl-propanamide, a controlled substance
      analogue of thiofentanyl, a Schedule I controlled substance;

all in violation of Title 21, United States Code, Sections 812, 813, 841(a)(1), and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1.      Co-conspirators did possess with intent to distribute and distribute a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and ANPP (4-anilino-*N*-phenethyl-4-piperidine), a Schedule II controlled substance, within the states of North Dakota, Oregon, Florida, and elsewhere;

2.      Co-conspirators did possess with intent to distribute and distribute a mixture and substance containing a detectable amount of acetyl fentanyl, a controlled substance analogue of fentanyl, and Beta-hydroxy-thiofentanyl, a controlled substance analogue of thiofentanyl, Schedule I controlled substance, within the states of Oregon, Florida, and elsewhere;

2

3.     Co-conspirators would and did attempt to conceal their activities by various means and methods including, but not limited to, using various telecommunication facilities designed to mask the identity of co-conspirators.  To ensure anonymity and facilitate this conspiracy, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, used various alias names, WICKR application names, and email addresses, including, but not limited to:

a. Phantom Pharma;

b. Joe Bleau;

c. Yaakov Goldmountain;

d. Mountain;

e. Goldmountain;

f. Solid Goldmountain;

g. Apexpharma;

h. TheGoldenDawn;

i. TheLink;

j. SilentWisdom;

k. Darkwebtycoon;

l. Pandora;

m. Pandora91;

n. Toxic Storm;

o. Expiresmarch31@gmail.com;

    p.  Lucratifanarchy777@gmail.com;

    q.  Thelink.pharma@gmail.com;

    r.  Undergroundportal777@gmail.com;

    s.  Livingmountain777@gmail.com; and

    t.  Canada.pharma.labs@gmail.com;

4.     Co-conspirators would and did use United States and Canadian currency in their drug transactions, as well as virtual currency systems;

5.     Co-conspirators used computers to order and sell substances on-line using internet sites that are specifically designed to be hidden from the public;

6.     Co-conspirators arranged to obtain controlled substances from outside the United States including, but not limited to, Canada and China.  These controlled substances were then distributed across the United States;

7.     In or about August through September 2014, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of fentanyl, acetyl fentanyl, and ANPP from Canada to Florida;

8.     In or about September through October 2014, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of acetyl fentanyl from Canada to Florida;

9.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Grand Forks, North Dakota, resulted in the death of B.E.H. on or about January 3, 2015;

10.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Portland, Oregon, resulted in serious bodily injury to L.E.H. on or about March 7, 2015;

11.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Portland, Oregon, resulted in serious bodily injury to S.D.D. on or about March 8, 2015;

12.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Portland, Oregon, resulted in serious bodily injury to K.R.E. on or about March 9, 2015;

13.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Portland, Oregon, resulted in death to L.E.B. on or about March 21, 2015;

14.     In or about February through March of 2015, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of beta-hydroxy-thiofentanyl from Canada to Portland, Oregon;

15.     In or about April of 2015, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, from China to Portland, Oregon;

16.     In or about May of 2015, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of a mixture and

5

substance containing a detectable amount of fentanyl, a Schedule II controlled substance, from Canada to Fargo, North Dakota;

17.     In or about November 2014, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of fentanyl to a co-conspirator in Portland, Oregon; and

18.     DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, was the organizer and leader in this criminal conspiracy and did so while incarcerated in the Drummond Institution, a medium security prison facility in Quebec, Canada;

In violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946).

<u>COUNT TWO</u>

**Conspiracy to Import Controlled Substances and Controlled Substance Analogues Into the United States Resulting in Serious Bodily Injury and Death**

The Grand Jury Further Charges:

DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

did knowingly and intentionally combine, conspire, confederate, and agree together with

Brandon Corde Hubbard, et al., currently indicted in the District of North Dakota,

Northeastern Division, Case No. 2:15-cr-12, and others, both known and unknown to the

grand jury, to import into the United States from Canada and China a mixture and

substance containing a detectable amount of fentanyl, a Schedule II controlled substance,

and ANPP (4-anilino-*N*-phenethyl-4-piperidine), a Schedule II controlled substance,

and the following analogue controlled substances, as defined in 21 U.S.C. § 802(32),

knowing the substances were intended for human consumption as provided in 21 U.S.C.

§ 813:

    A.  Acetyl fentanyl (*N*-(1-phenethylpiperidin-4-yl)-*N*-pheylacetamide), a

        controlled substance analogue of fentanyl; and

    B.  Beta-hydroxy-thiofentanyl, a/k/a (β)-hydroxythiofentanyl, *N*-[1-[2-hydroxy-2-

        (2-thienyl)ethyl]-4-piperidinyl]-*N*-phenyl-propanamide, a controlled substance

        analogue of thiofentanyl, a Schedule I controlled substance;

all in violation of Title 21, United States Code, Sections 812, 813, 841(b)(1)(C),

952(a)(2), 960(a)(1), and 960(b)(3), and Title 18, United States Code, Section 2.

<u>Overt Acts</u>

1.      DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, was the

manager, supervisor, and leader of the criminal organization that facilitated the unlawful

importation of fentanyl, acetyl fentanyl, ANPP, and beta-hydroxy-thiofentanyl from

Canada and China.  These controlled substances and controlled substance analogues were

then unlawfully distributed throughout the United States as part of the conspiracy alleged

in Count One of this Indictment;

2.      Members of the conspiracy paid the international sources of supply for

these substances on numerous occasions using the means and methods alleged in

Count Five of this Indictment; and

3.      The unlawful activities related to the unlawful importation of fentanyl

resulted in deaths and serious bodily injury to multiple victims as alleged in Counts One

and Three of this Indictment;

In violation of Title 21, United States Code, Section 963; <u>Pinkerton v. United</u>

<u>States</u>, 328 U.S. 640 (1946).

<u>COUNT THREE</u>

**Aiding and Abetting the Distribution of a Controlled Substance Resulting in Death**

The Grand Jury Further Charges:

In or about November 2014 to on or about January 3, 2015, in the District of North Dakota, and elsewhere,

DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

did knowingly and intentionally aid and abet the distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, resulting in death to B.E.H. in Grand Forks, North Dakota, on or about January 3, 2015;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

<u>COUNT FOUR</u>

**Money Laundering Conspiracy to Conceal and Disguise Nature, Location, Ownership, and Control of Proceeds of Specified Unlawful Activity**

The Grand Jury Further Charges:

From in or about January 2013 to the present, in the Districts of North Dakota, Oregon, Florida, and elsewhere,

DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

did knowingly and willfully combine, conspire, confederate, and agree together and with others to commit an offense against the United States, specifically, to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (a)(2)(B)(i), in that members of the conspiracy did knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate commerce in the United States and moved monetary instruments from the United States to Canada and China as described below, which involved the proceeds of a specified unlawful activity, that is, the distribution of controlled substances in violation of Title 21, United States Code, Sections 812, 813, 841, 846, and 848, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(h).

Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1.     During the course of and to further said conspiracy, members of the conspiracy sold controlled substances across the United States including, but not limited to:  North Dakota, Oregon, Florida, and elsewhere;

2.     During the time frame of the conspiracy, members of the conspiracy sold the controlled substances in exchange for United States currency, Canadian currency, and virtual currency.  Co-conspirators conducted numerous financial transactions including, but not limited to, money wires, bank wires, bank deposits, and the use of virtual currency systems to pay for controlled substances and sent the money to co-conspirators in Canada and China; and

3.     The purpose of transferring currency in this fashion was to conceal and disguise the nature, source, ownership, and control of the proceeds from the trafficking of controlled substances;

In violation of Title 18, United States Code, Section 1956(h).

11

<u>COUNT FIVE</u>

**Continuing Criminal Enterprise**

The Grand Jury Further Charges:

From on or about January 2013 to the present, in the Districts of North Dakota,

Oregon, Florida, and elsewhere,

DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

did knowingly and intentionally engage in a Continuing Criminal Enterprise, in that he

did violate Title 21, United States Code, Sections 812, 813, 841(a)(1), and 846 including,

but not limited to, the violations alleged in Counts One through Three of this Indictment.

These counts are incorporated herein by reference.  The above-described violations were,

and are, part of a continuing series of violations.

These continuing series of violations were undertaken by defendant DANIEL

VIVAS CERON, a/k/a DANIEL VIVAS-CERON, in concert with at least five other

persons with respect to whom DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-

CERON, occupied a position of organizer, supervisor, and manager including, but not

limited to, the following individuals:  (1) X.C.N.; (2) M.E.C.E.; (3) R.N.D.C.; (4) L.V.;

(5) R.S.; and (6) M.G.

From this continuing series of violations DANIEL VIVAS CERON, a/k/a

DANIEL VIVAS-CERON, obtained substantial income;

In violation of Title 21, United States Code, Sections 848(a) and 848(c).

12

FORFEITURE ALLEGATION

The Grand Jury Further Finds Probable Cause That:

Upon the conviction of DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, of any one of the controlled substance offenses alleged in Counts One and Five, in violation of Title 21, United States Code, Sections 846 and 848, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the violations and any and all property used or intended to be used in any manner or part to commit or to facilitate the commission of the violations alleged in Counts One and Five of this Indictment.

If any of the forfeitable property as a result of any act or omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of said defendant up to the value

of the forfeitable property;

In violation of Title 21, United States Code, Section 853.

A TRUE BILL:


/s/ Grand Jury Foreperson
Foreperson


/s/ Christopher C. Myers
CHRISTOPHER C. MYERS
Acting United States Attorney

CCM:ld

14