IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL VIVAS CERON,<br>a/k/a DANIEL VIVAS-CERON,<br><br>Defendant. | Case No. 2:15-cr-00055<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Drew H. Wrigley, United States Attorney for the District of North Dakota, and Christopher C. Myers, Assistant United States Attorney; defendant, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON; and defendant's counsel, Charles A. Stock, agree to the following:

1. Defendant acknowledges the Superseding Indictment charges violations of Title 21, United States Code, Sections 841(a)(a), 841(b)(1)(C), 846, 848(a), 848(c), 853, and 963; and Title 18, United States Code, Sections 1503, 1956(h), and 2.

2. Defendant has read the charges and defendant's attorney has fully explained the charges to defendant.

3. Defendant fully understands the nature and elements of the charged crimes.

4. Defendant will voluntarily plead guilty to Counts One, Four, and Five of the Superseding Indictment.

5. The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties

specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give defendant a right to withdraw defendant's guilty plea.

6. Defendant will plead guilty because defendant is in fact guilty of the charges. In pleading guilty to Count One of the Superseding Indictment, defendant acknowledges that:

From in or about January 2013 to the present, in the Districts of North Dakota, Oregon, Florida, and elsewhere,

DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

did knowingly and intentionally combine, conspire, confederate, and agree together with Brandon Corde Hubbard, et al., currently indicted in the District of North Dakota, Northeastern Division, Case No. 2:15-cr-12, and others, both known and unknown to the grand jury, to possess with intent to distribute and distribute a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and ANPP (4-anilino-*N*-phenethyl-4-piperidine), a Schedule II controlled substance, and did possess with intent to distribute and distribute the following analogue controlled substances, as defined in 21 U.S.C. § 802(32), knowing the substances were intended for human consumption as provided in 21 U.S.C. § 813:

    A. Acetyl fentanyl (*N*-(1-phenethylpiperidin-4-yl)-*N*-pheylacetamide), a controlled substance analogue of fentanyl; and

B. Beta-hydroxy-thiofentanyl, a/k/a (β)-hydroxythiofentanyl, $N$-[1-[2-hydroxy-2-(2-thienyl)ethyl]-4-piperidinyl]-$N$-phenyl-propanamide, a controlled substance analogue of thiofentanyl, a Schedule I controlled substance;

all in violation of Title 21, United States Code, Sections 812, 813, 841(a)(1), and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. Co-conspirators did possess with intent to distribute and distribute a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and ANPP (4-anilino-$N$-phenethyl-4-piperidine), a Schedule II controlled substance, within the states of North Dakota, Oregon, Florida, and elsewhere;

2. Co-conspirators did possess with intent to distribute and distribute a mixture and substance containing a detectable amount of acetyl fentanyl, a controlled substance analogue of fentanyl, and Beta-hydroxy-thiofentanyl, a controlled substance analogue of thiofentanyl, a Schedule I controlled substance, within the states of Oregon, Florida, and elsewhere;

3. Co-conspirators would and did attempt to conceal their activities by various means and methods including, but not limited to, using various telecommunication facilities designed to mask the identity of co-conspirators. To ensure anonymity and facilitate this conspiracy, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

used various alias names, WICKR application names, and email addresses, including, but not limited to:

    a. Phantom Pharma;

    b. Joe Bleau;

    c. Yaakov Goldmountain;

    d. Mountain;

    e. Goldmountain;

    f. Solid Goldmountain;

    g. Apexpharma;

    h. TheGoldenDawn;

    i. TheLink;

    j. SilentWisdom;

    k. Darkwebtycoon;

    l. Pandora;

    m. Pandora91;

    n. Toxic Storm;

    o. Expiresmarch31@gmail.com;

    p. Lucratifanarchy777@gmail.com;

    q. Thelink.pharma@gmail.com;

    r. Undergroundportal777@gmail.com;

    s. Livingmountain777@gmail.com; and

    t. Canada.pharma.labs@gmail.com;

4. Co-conspirators would and did use United States and Canadian currency in their drug transactions, as well as virtual currency systems;

5. Co-conspirators used computers to order and sell substances on-line using internet sites that are specifically designed to be hidden from the public;

6. Co-conspirators arranged to obtain controlled substances from outside the United States including, but not limited to, Canada and China. These controlled substances were then distributed across the United States;

7. In or about August through September 2014, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of fentanyl, acetyl fentanyl, and ANPP from Canada to Florida;

8. In or about September through October 2014, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of acetyl fentanyl from Canada to Florida;

9. The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Grand Forks, North Dakota, resulted in the death of B.E.H. on or about January 3, 2015;

10. The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Portland, Oregon, resulted in serious bodily injury to L.E.H. on or about March 7, 2015;

11. The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Portland, Oregon, resulted in serious bodily injury to S.D.D. on or about March 8, 2015;

12. The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Portland, Oregon, resulted in serious bodily injury to K.R.E. on or about March 9, 2015;

13. The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, in Portland, Oregon, resulted in death to L.E.B. on or about March 21, 2015;

14. In or about February through March of 2015, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of beta-hydroxy-thiofentanyl from Canada to Portland, Oregon;

15. In or about April of 2015, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, from China to Portland, Oregon;

16. In or about May of 2015, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, from Canada to Fargo, North Dakota;

17. In or about November 2014, DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, and other co-conspirators arranged a shipment of fentanyl to a co-conspirator in Portland, Oregon; and

18.    DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, was the organizer and leader in this criminal conspiracy and did so while incarcerated in the Drummond Institution, a medium security prison facility in Quebec, Canada;

In violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946).

As to Count Four, defendant acknowledges that:

From in or about January 2013 to the present, in the Districts of North Dakota, Oregon, Florida, and elsewhere,

DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

did knowingly and willfully combine, conspire, confederate, and agree together and with others to commit an offense against the United States, specifically, to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (a)(2)(B)(i), in that members of the conspiracy did knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate commerce in the United States and moved monetary instruments from the United States to Canada and China as described below, which involved the proceeds of a specified unlawful activity, that is, the distribution of controlled substances in violation of Title 21, United States Code, Sections 812, 813, 841, 846, and 848, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(h).

Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. During the course of and to further said conspiracy, members of the conspiracy sold controlled substances across the United States including, but not limited to: North Dakota, Oregon, Florida, and elsewhere;

2. During the time frame of the conspiracy, members of the conspiracy sold the controlled substances in exchange for United States currency, Canadian currency, and virtual currency. Co-conspirators conducted numerous financial transactions including, but not limited to, money wires, bank wires, bank deposits, and the use of virtual currency systems to pay for controlled substances and sent the money to co-conspirators in Canada and China; and

3. The purpose of transferring currency in this fashion was to conceal and disguise the nature, source, ownership, and control of the proceeds from the trafficking of controlled substances;

In violation of Title 18, United States Code, Section 1956(h).

As to Count Five, defendant acknowledges that:

From in or about January 2013 to the present, in the Districts of North Dakota, Oregon, Florida, and elsewhere,

DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON,

did knowingly and intentionally engage in a Continuing Criminal Enterprise, in that he did violate Title 21, United States Code, Sections 812, 813, 841(a)(1), and 846 including,

but not limited to, the violations alleged in Counts One through Three of this Indictment. These counts are incorporated herein by reference. The above-described violations were, and are, part of a continuing series of violations.

These continuing series of violations were undertaken by DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, in concert with at least five other persons with respect to whom DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, occupied a position of organizer, supervisor, and manager including, but not limited to, the following individuals: (1) X.C.N.; (2) R.N.D.C.; (3) L.V.; (4) R.S.; and (5) M.G.

From this continuing series of violations DANIEL VIVAS CERON, a/k/a DANIEL VIVAS-CERON, obtained substantial income;

In violation of Title 21, United States Code, Sections 848(a) and 848(c).

7.   Defendant understands the following maximum penalties apply:

COUNT ONE
Imprisonment:         Life, minimum mandatory life
Fine:                 $20,000,000
Supervised Release:   10 years
Special Assessment:   $100

COUNT FOUR
Imprisonment:         20 years
Fine:                 $500,000
Supervised Release:   3 years
Special Assessment:   $100

COUNT FIVE
Imprisonment:         Life; minimum mandatory 20 years
Fine:                 $2,000,000
Supervised Release:   5 years
Special Assessment:   $100

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8. Defendant understands that by pleading guilty defendant surrenders rights, including:

(a) The right to a speedy public jury trial and related rights as follow:

(i) A jury would be composed of twelve (12) lay persons selected at random. Defendant and defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that defendant is presumed innocent and that it could not return a guilty verdict unless it found defendant guilty beyond a reasonable doubt.

(ii) If a trial were held without a jury, then the Judge would find the facts and determine whether defendant was guilty beyond a reasonable doubt.

(iii) At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for defendant refuse to appear voluntarily, defendant can require their attendance through the subpoena power of the Court.

    (iv) At a trial, defendant has a privilege against self-incrimination; thus, defendant can decline to testify. No inference of guilt can be drawn from defendant's refusal to testify. Defendant can choose to testify, but cannot be required to testify.

  (b) Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask defendant questions about defendant's criminal conduct to ensure that there is a factual basis for defendant's plea.

  9. Defendant understands that by pleading guilty defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of defendant's waiver.

  10. The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a), and must consult and take into account the United States' Sentencing Commission, <u>Guidelines Manual,</u> (Nov. 2018) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

  11. This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free

to prosecute defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12.     Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom defendant is licensed, or with whom defendant does business, of defendant's conviction.

13.     The parties agree that the base offense level under the Sentencing Guidelines for defendant's conduct is as follows:

Count One and Count Five (grouped) -  USSG § 2D1.1(a)(1) – Level 43

+ 2 levels for mass-marketing using smart phone, USSG § 2D1.1(b)(7);

+2 levels for money laundering, USSG § 2S1.1 – Count Four;

+4 levels for aggravating role, USSG § 3B1.1(a)

NET OFFENSE LEVEL = 51 – Under the facts of this case, even assuming acceptance of responsibility as outlined in paragraphs 14 and 15 below, the guideline range is Life. (An offense level of more than 43 is to be treated as an offense level 43 – see USSG Chapter 5, Part A, Note 2)

14.     At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15. The parties stipulate and agree that, as of the date of this agreement, the defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should the defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16. Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the Sentencing Guidelines' Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

17. At sentencing, the United States:

(a) will recommend a sentence within the applicable Guideline range, or the minimum mandatory, whichever is greater;

(b) recommend the amount of restitution to be determined at sentencing;

(c) move to dismiss Counts Two, Three, and Six of the Superseding Indictment.

18. Defendant acknowledges and understands that if defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and defendant will face the following consequences: (1) all testimony and other information defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against defendant and to use any information obtained directly or indirectly from defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting defendant for perjury, false statement(s), or false declaration(s), if defendant commits such acts in connection with this agreement or otherwise.

19. Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order defendant to make restitution for all loss caused by defendant's conduct, regardless of whether counts of the Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21. **Defendant's Waiver of Appeal.** Defendants have a right to appeal their conviction and sentence (Judgment), unless they agree otherwise. Appeals are taken to the United States Court of Appeals for the Eighth Circuit (appellate court), pursuant to Title 18, United States Code, Section 3742(a). The appellate court has ruled that defendants can waive (give up) their right to appeal. Defendants often waive their right to appeal as part of a plea agreement and in exchange for concessions by the United States. The appellate court will enforce such waivers.

Defendant and defendant's attorney acknowledge they have fully reviewed and fully discussed the record in this case and all issues that may be raised on appeal. They have fully discussed defendant's right of appeal and the consequences of waiver. Defendant has decided to waive any right of appeal, except as may be provided herein.

By signing this Plea Agreement, defendant voluntarily waives defendant's right to appeal the Court's Judgment against defendant; and, absent a claim of ineffective assistance of counsel, defendant waives all rights to contest the Judgment in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255. Defendant reserves only the right to appeal from a sentence that is greater than the upper limit of the Court-determined Sentencing Guidelines range.

Defendant understands that the United States was motivated by defendant's willingness to waive any right of appeal when the United States chose to offer defendant terms of a plea agreement. In other words, the United States was willing to offer certain terms favorable to defendant in exchange for finality. Defendant understands and agrees this case will be over once defendant has been sentenced by the Court. Defendant agrees that it will be a breach of this agreement if defendant appeals in violation of this agreement. The United States will rely upon defendant's waiver and breach as a basis for dismissal of the appeal. Moreover, defense counsel may reasonably conclude and inform the appellate court that an appeal is wholly frivolous. Defense counsel may then move to withdraw, citing Anders v. California, 386 U.S. 738, 744 (1967), and Smith v. Robbins, 528 U.S. 259 (2000). Defendant agrees an appeal in violation of this agreement should be dismissed.

By signing this Plea Agreement, the defendant further specifically waives defendant's right to seek to withdraw defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. The defendant agrees that any attempt to withdraw defendant's plea will be denied and any appeal of such denial should be dismissed.

22. The Assistant United States Attorney and attorney for defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes

regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

23. Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed defendant's constitutional and other rights, including, but not limited to, defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:                                        DREW H. WRIGLEY
                                               United States Attorney


Dated: 6/20/19                                 _____
                                               By: CHRISTOPHER C. MYERS
                                               Assistant United States Attorney


Dated: 6/17/2019                               _____
                                               DANIEL VIVAS CERON,
                                               a/k/a DANIEL VIVAS-CERON
                                               Defendant


Dated: 6/17/2019                               _____
                                               CHARLES A. STOCK
                                               Attorney for Defendant